UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-20123-CR-ROSENBAUM

UNITED STATES OF AMERICA,

        Plaintiff,

v.

STEVEN STEINER,

        Defendant.
_____/

## ORDER ON COMPETENCY

Defendant Steven Steiner is charged by indictment with conspiracy to commit mail and wire fraud, mail fraud, and wire fraud. *See* D.E. 1. This case was set for trial to begin on July 30, 2012. *See* D.E. 33. On June 26, 2012, Defendant filed his Motion for a Continuance of Trial [D.E. 70]. In that motion, Steiner sought a continuance of the trial until October 2012. In support of his Motion for Continuance, Steiner offered various grounds, including his assertion that he was not mentally competent at that time to proceed to trial. *See* D.E. 70 at ¶ 5. Steiner based this conclusion on an *ex parte* psychological evaluation conducted by Michael P. Brannon, Psy. D. *See* D.E. 65.

The Government urged the Court to construe Steiner's Motion for Continuance as a request from Steiner for a mental competency evaluation under 18 U.S.C. § 4241 and to defer ruling on Steiner's Motion for Continuance. *See* D.E. 72. In the alternative, the Government asked the Court to consider its Response the Government's request for a mental competency evaluation. *Id.* at 2. Steiner did not object to the Government's request for a mental competency evaluation.

Title 18, United States Code, Section 4241(a) provides, in relevant part, that upon a

defendant's or the government's motion for a hearing to determine the mental competency of a defendant, the court shall grant the motion "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." Here, the Government made such a motion, and, pursuant to 18 U.S.C. § 4241(b), the Court granted it.

On August 30, 2012, Lisa B. Feldman, Psy. D., the licensed psychologist employed by the Bureau of Prisons, filed her report with the Court, opining that Defendant does not suffer from a severe mental disorder or defect that would preclude his ability to understand the nature and consequences of the proceedings against him or his ability to assist his attorney in his own defense. *See* D.E. 117 at 1-18. Upon review of Dr. Feldman's report, the Court set this matter for a competency hearing in accordance with 18 U.S.C. § 4247(d).

During the hearing held on September 13, 2012, the Government played for the Court a recording of a telephone call made by Defendant from jail to Joe Fecker, the brother of Co-defendant Henry Fecker ("Fecker") [Government Exhibit 2]. In the telephone call, Defendant directed Joe Fecker to repeat what he was saying so Co-defendant Fecker could hear him. In an apparent effort to convince Fecker to fire his attorney and agree to a mutual defense with Defendant, Defendant then went on for several minutes to criticize the job that Fecker's attorney was doing for Fecker with respect to auction proceedings occurring in Maine. Then Defendant stated to Joe Fecker, "Your brother has been set up. His lawyer is working with the Government. Tell your brother I'm strong, stronger; I'm getting my health back. I put on some weight, and now I'm ready to go. No one is going to do this to me, my family, him, or anybody. He is my family, all right?" Defendant further

directed Joe Fecker to instruct Co-defendant Fecker to write a letter requesting an *ex parte* hearing with the Court, apparently regarding Fecker's representation.

In addition to this recording, Dr. Feldman testified that she reviewed numerous other materials in evaluating Defendant's mental competency. The materials on which she relied the most heavily are listed in her report at pages 2 through 4. Dr. Feldman also conducted clinical interviews with Defendant and administered the Mental Status Examination, the Booklet Category Test — Second Edition, the Trail Making Test, the Structured Inventory of Malingered Symptomatology, and the Personality Assessment Inventory.[1] *See also* D.E. 117 at 5.

Overall, Dr. Feldman met with Defendant for approximately eight hours over five to six meetings. According to Dr. Feldman, the early contacts with Steiner all began with a period of tearfulness and guardedness. Once that passed, Dr. Feldman was able to proceed with testing. As Dr. Feldman describes Defendant, following a July 27, 2012, bond hearing before the Honorable Kathleen Williams in another criminal case against Defendant, his outlook appeared to change. He appeared much more proactive in advocating for his position and proceeding with his case, and Dr. Feldman did not need to spend as much time addressing the preliminary matters that had delayed earlier evaluations. Based on her interactions with Defendant, as well as the materials she reviewed — including recordings of Defendant's telephone calls from jail, Dr. Feldman concluded that Defendant does not suffer from a severe mental disorder or defect that would preclude his ability to understand the nature and consequences of the proceedings against him or his ability to assist his attorney in his own defense.

---

[1] Dr. Feldman also administered the Minnesota Multiphasic Personality Inventory - 2 Restructured Form, but the test was not scored because of problems with the facility's equipment.

The day after Defendant received a copy of Dr. Feldman's report, Defendant requested to meet with Dr. Feldman. Defendant brought a copy of the report with him to the meeting. His copy contained numerous notes that he had made on it. During the meeting, Defendant complained that Dr. Feldman had made erroneous statements or omissions in her report and that the report did not accurately reflect what he had said to her during their meetings. According to Dr. Feldman, Defendant suffered from no impairment when they met. During the post-report discussion, Defendant went through no initial period of tearfulness or significant report of any medical or mental-health complaints. To the contrary, she described him as "very focused." As Dr. Feldman described Defendant, he went through Dr. Feldman's report very coherently and was very sophisticated in his response, particularly considering the length of the report and the limited period for which he possessed it prior to the meeting. Dr. Feldman testified that Defendant was trying to "pick apart" the report.

Based on her several interactions with Defendant, the materials she reviewed, and the post-report meeting with Defendant, Dr. Feldman concluded that Defendant was competent to proceed to trial. Although Dr. Feldman opined that Defendant may have previously been impaired, as of her interactions with him, Dr. Feldman explained, he was not. Instead, he was focused and in control. He stayed on his message during the telephone call and the meeting with Dr. Feldman and was not distracted or inhibited in his thought process or ability to express himself.

Dr. Michael Brannon also testified at the hearing. He explained that had conducted a series of tests on Defendant on June 2, 2012. Their meeting lasted four to five hours, and he has not met with Defendant since that time. According to Dr. Brannon, on June 2, 2012, Defendant was able to provide factual information during his evaluation, but he had difficulty in "engaging in rational

appreciation of those same competency-to-proceed criteria." As Dr. Brannon described Defendant's condition, Defendant was not competent to proceed on June 2, 2012, although Dr. Brannon concluded that "[h]e would likely be restored to competency through the prescription of psychotropic medication in his current jail setting." D.E. 65 at 2.

Dr. Brannon continued, however, that Defendant "sounded very different" in the recording of the telephone call from July 27, 2012, that the Government played during the hearing. Indeed, Dr. Brannon opined, Defendant sounded "much improved in terms of his emotional functioning." Dr. Brannon was careful to explain that his opinion regarding Defendant's competency to proceed was limited to Defendant's competency to proceed as of June 2, 2012, and he could not comment on Defendant's competency to proceed as of Dr. Feldman's examination of Defendant or as of today.

Based on the Court's review of the reports and testimony of Drs. Brannon and Feldman, as well as the Court's review of the July 27, 2012, telephone recording, the Court concludes that Defendant does not suffer from a severe mental disorder or defect that would preclude his ability to understand the nature and consequences of the proceedings against him or his ability to assist his attorney in his own defense. First, the opinions of the two doctors not inconsistent with each other with regard to Defendant's current mental state. Second, Defendant's statements and demeanor in the July 27, 2012, call recording reflect a man who clearly understands the nature and consequences of the proceedings against him and is able to assist in his own defense.

**DONE AND ORDERED** at Fort Lauderdale, Florida, this 13th day of September 2012.

_____
ROBIN S. ROSENBAUM
UNITED STATES MAGISTRATE JUDGE

copies:	Counsel of Record